UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-634-1 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| ANTONIO BRADLEY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Antonito Bradley ("Bradley") for revocation of the detention order. (Doc. No. 26.) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 28.) The Court finds that the present motion may be resolved on the record and the parties' written submissions. To the extent that Bradley is requesting a *de novo* review of the magistrate judge's detention order, the Court has reviewed the following:

(1) the complaint (Doc. No. 1);

(2) the affidavit supporting the complaint (Doc. No. 1-1);

(3) the Pretrial Services Report—Criminal History Only (Doc. No. 3);

(4) the Pretrial Services Report (prepared 10/21/2022) (Doc. No. 8);

(5) the magistrate judge's order of detention (Doc. No. 10);

(6) the indictment (Doc. No. 11);

(7) the transcript from the Preliminary and Detention Hearing (30);

(8) Bradley's motion to revoke (Doc. No. 26); and

(9) the government's response to the motion to revoke (Doc. No. 28).

## I. BACKGROUND

On October 13, 2022, a one-count complaint issued charging Bradley with possession with intent to distribute 50 grams or more of methamphetamine. (Doc. No. 1 (Complaint).) The complaint was supported by an affidavit prepared by Jose A. Alcantara, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") of Cleveland. (Doc. No. 1-1 (Affidavit).) On October 27, 2022, an indictment issued charging defendants, Bradley and Albert Robinson Jr. ("Robinson"), with one count each of possession with intent to distribute fentanyl. (Doc. No. 11.) Robinson was also charged with possession of a firearm in furtherance of a drug trafficking crime and being a felon in possession of a firearm. (*Id.*)

At Bradley's arraignment on October 14, 2022, the government moved for detention pending trial. Attorney Timothy Kucharski appeared as retained counsel for Bradley. (Minutes of Proceedings [Non-Document], 10/14/2022.) At the conclusion of the arraignment, Bradley was remanded to the custody of the U.S. Marshals and a preliminary and detention hearing was set. (*Id.*) On October 21, 2022, Magistrate Judge Thomas Parker conducted the preliminary and detention hearing where Bradley was, again, represented by counsel. (Minutes of Proceedings [Non-Document], 10/21/2022; Doc. No. 30 (Transcript of Preliminary and Detention Hearing).) At the conclusion of the hearing, the magistrate judge took the matter under advisement.

On October 24, 2022, the magistrate judge granted the government's motion for detention. (Doc. No. 10 (Order).) In ordering Bradley detained pending trial, the magistrate judge determined that a rebuttable presumption arises under 18 U.S.C. § 3142(e)(3) in favor of detention because

Bradley was charged with an offense for which a maximum term of imprisonment of 10 years or more is prescribed under the Controlled Substances Act. (Doc. No. 10 at 2.[1]) Further, while the magistrate judge found that Bradley had presented sufficient evidence to rebut the presumption, he also determined that the government had demonstrated by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Bradley's appearance as required. (*Id.*)

In reaching this conclusion, the magistrate judge relied on the following: a finding that the weight of evidence against Bradley was strong, the fact that he was facing a lengthy period of incarceration if convicted, his prior criminal history, his participation in criminal activity while on supervision, and his prior supervision violations. (*Id.* at 2–3.) The magistrate judge offered this further explanation:

> In addition to the foregoing, the court finds significant that [Bradley] has alleged ties to persons outside the United States (see Government Exhibit 1) who would be in a position to enable [Bradley] to flee the jurisdiction should they wish to do so. Bond conditions cannot reasonably assure that [Bradley] would not abscond or flee with the aid of such third parties.

(*Id.* at 3.)

On February 16, 2023, Bradley filed the present motion for bond. In support of his motion, Bradley underscores many of the points he made during the detention hearing, including: that he has significant ties to northeast Ohio in that his children, fiancé, and sister live in Cuyahoga County; that he does not have a passport; and that he was polite and compliant with police at the time of his arrest. (Doc. No. 26, at 5.) Additionally, he notes that, since he was detained, his sister

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

3

has required surgery, "which has limited her ability to care for [Bradley's] elderly grandmother. Also, [he continues,] Mr. Bradley was extremely involved in the care of his children." (*Id.*)

## II. DISCUSSION

In his motion, Bradley is seeking review and revocation of the magistrate judge's order of detention, pursuant to 18 U.S.C. § 3145(b), and is also requesting that the detention hearing be reopened under 18 U.S.C. § 3142(f). Section 3145(b) permits a defendant to seek review of a pretrial detention order of a magistrate judge. When the district court "acts on a motion to revoke or amend a magistrate judge's pretrial detention order, [it] acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Reuben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). Section 3142(f) permits the reopening of the detention hearing upon new and material information. 18 U.S.C. § 3142(f). While motions to revoke under § 3145(b) are filed with the district court, motions to reopen are typically directed to the same judicial officer who conducted the initial hearing. *See United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003). In this case, the magistrate judge would be the appropriate judicial officer; yet the motion was directed to the undersigned. Given the fact that the Court has the discretion under § 3145(a)(1) to hear additional evidence as part of its *de novo* review, the Court finds that it would be appropriate and expeditious for this judicial officer to address Bradley's right to pretrial release under both statutes. *See, e.g., United States Baker*, No. 6:21-cr-32, 2021 WL 2744512, at *4 (E.D. Ky. July 1, 2021).

### A. 18 U.S.C. § 3142(f)

A judicial officer may reopen a detention hearing:

at any time before trial if a judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on

4

> the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). New and material information for purposes of § 3142(f) "consists of something other than a defendant's own evaluation of his character or the strength of the case against him; truly changed circumstances, something unexpected, or a significant event." *United States v. Jerdine*, No. 1:08-cr-481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). The statutory provision authorizing the reopening of a detention hearing is strictly interpreted such that "hearings should not be reopened if the evidence proffered was available at the time of the hearing." *Id.* Additionally, the newly proffered information "must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. Apr. 13, 2012) (citing § 3142(f)(2)(B)).

To the extent that Bradley, once again, relies on his desire to be involved in the lives of his children, this information was known to Bradley at the time of the detention hearing and discussed during the hearing, and does not provide a basis for reopening the hearing. *See United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *1 (6th Cir. Sept. 22, 2020) ("To reopen a proceeding, a defendant must first establish that the information was not previously known to him."); *Jerdine*, 2009 WL 4906564, at *3 (similar). And while his sister's surgery may constitute a changed circumstance, it does not dispel the reasons given by the magistrate judge for finding that Bradley is a flight risk. Even though Bradley insists that "[e]verything in [his] world is in Cuyahoga County[,]" the magistrate judge found (and Bradley does not deny) that he has ties to

individuals outside the United States who could assist him fleeing the jurisdiction.[2] (*See* Doc. No. 10, at 3.) Ultimately, the Court finds that Bradley has failed to demonstrate a basis for reopening the detention hearing.

### B. 18 U.S.C. § 3145(b)

In any event, having conducted its *de novo* review of the record, the Court independently finds that the government has met its burden of proof and established by a preponderance of the evidence that Bradley is a flight risk. Additionally, the Court finds that the record, which includes evidence that was not available at the time of the detention hearing, demonstrates by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. *See* 18 U.S.C. § 1342(e).

When a defendant has rebutted the presumption of detention,[3] the Court turns to the government's proffer of evidence and considers the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;[4] (3) the history and characteristics of the defendant; and (4) nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

At the hearing, the government proffered that the DEA's investigation into a drug trafficking organization ("DTO") out of Mexico revealed that Bradley was serving as the Cleveland contact for the foreign DTO and was tasked with facilitating the transportation/transfer

---

[2] Evidence of this connection is discussed more fully in the next section of this Memorandum Opinion.

[3] The Court agrees with the magistrate judge that Bradley's evidence, including testimony from his sister regarding his connections to the community and his family, satisfactorily rebutted the presumption in favor of pretrial detention.

[4] The Sixth Circuit has clarified that the second factor, relating to the weight of the evidence, refers to "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citation omitted).

of the proceeds from drug sales in the Cleveland area. (Doc. No. 28, at 2–4 (citing Search Warrant Affidavit).) Specifically, the DEA determined that the DTO was using tokens[5] to communicate with persons in the United States who were responsible for transferring the money from the drug transactions. With one such token, TFO Agent Alvarez was able to use a cell phone to pose as a recipient of the DTO's drug proceeds. He ultimately received text messages from an individual identified as Bradley to discuss the transfer of the drug-related funds. (*Id*.)

Having connected Bradley to the foreign DTO, the DEA continued its surveillance of Bradley and a residence in Cleveland associated with Bradley. Agents witnessed what they believed was a drug transaction occur in the garage of the residence that involved Bradley, the buyer, and a third individual. After the buyer left the premises, agents conducted a traffic stop with the buyer. During the stop, agents recovered several grams of a red or pink substance. Laboratory testing conducted after the complaint was issued (and the detention hearing was held) confirmed that the substance was, in fact, 2 grams of fentanyl. (*Id*. at 4 (citing Doc. No. 1-1 ¶¶ 5–8).)

Agents also surveilled Bradley when he left the premise. After he made a stop to pick up Robinson, agents conducted a traffic stop of Bradley's vehicle.[6] An eventual search of the vehicle led to the discovery of a firearm, drugs, and a scale located in a satchel that belonged to Robinson. Subsequent lab testing confirmed that the drugs included 20 grams of fentanyl and 3 grams of cocaine. Bradley's satchel was also searched, and it was found to contain a small amount of

---

[5] A "token", which is commonly the serial number from a dollar bill, is used by members of large-scale foreign DTOs to verify each other's identity during drug transactions. The token is generated by one party and then sent to the person coordinating the transaction, often in a foreign country (in this case, Mexico). The coordinating person then forwards the token to the party at the other end of the transaction. (*See* Doc. No. 28, at 2 (citing Affidavit).)

[6] The Court acknowledges that Bradley has filed a motion to suppress relating to this stop. (Doc. No. 29.) Nothing in this opinion is meant to indicate how the Court may rule relative to that motion, as that motion is not ripe for consideration.

cocaine, three pills (later determined to be methamphetamine), and a key to a red toolbox that was located in the garage of the premise Bradley had just left. When agents searched the garage, pursuant to a search warrant, they opened the toolbox and discovered multiple bags containing the same red/pink substance discovered in the buyer's car. Testing on the substance discovered in the toolbox revealed that it was approximately 123 grams of fentanyl. Officers also discovered 263 grams of methamphetamine that lab testing determined to be 99% pure. (*Id*. at 4-6 (citing 1-1 ¶¶ 9–18).)

Turning to the factors that guide the Court's analysis, the Court finds that the nature and circumstances of the charged offenses favor continued detainment. Bradley was arrested after agents found large quantities of fentanyl, an extremely dangerous drug, in a garage where agents viewed Bradley engaging in a drug transaction. The suspected buyer was also found in possession of the same substance later identified as fentanyl. When Bradley was stopped, the passenger in his car, co-defendant Robinson, had in his possession fentanyl, a gun, and a scale—all tools of the drug trade. These ties to drug trafficking weigh in favor of finding that Bradley represents a danger to others and to the community. *See Stone*, 608 F.3d at 939 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." (citing and quoting *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) ("[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community"))). Moreover, the DEA's investigation into Bradley revealed that he is tied to a Mexican DTO. The Court shares the magistrate judge's concerns that Bradley's contacts in this foreign DTO could assist him in fleeing the jurisdiction. Finally, Bradley faces a lengthy prison sentence if he is convicted of the charged offenses, giving further reason to believe that

Bradley represents a flight risk. *See United States v. You*, No. 2:19-cr-14, 2019 WL 2426659, at *6 (E.D. Tenn. June 10, 2019) (considering lengthy prison sentence as an incentive to flee).

The weight of the evidence also favors detention. The evidence offered at the detention hearing, when considered in conjunction with the laboratory testing that was conducted after the hearing, demonstrates that the drugs Bradley is alleged to be involved in trafficking are large amounts of fentanyl and methamphetamine. It bears repeating that the dangers associated with the trafficking of large quantities of drugs, especially drugs as serious as fentanyl, are considerable. *See, e.g., United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (finding in favor of pretrial detention, noting that "Taylor is accused of distribution of fentanyl, an exceptionally dangerous drug. It is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community—and the risks with fentanyl specifically are even greater"). As the government observes, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6 (collecting cases).

Likewise, the third factor—the history and characteristics of the defendant—favors detention. The Pretrial Services Report reflects that Bradley has several prior convictions, including prior state convictions for failure to comply with an officer's orders, unauthorized use of a motor vehicle, attempted drug possession, and drug trafficking. (Doc. No. 8.) The current charges suggest that, if anything, Bradley's conduct is escalating as he is now alleged to have trafficked substantial amounts of fentanyl. This is especially troubling when the Court considers pretrial release, given that Bradley previously had two community control violations, one for committing another crime while on supervision and a second violation for using drugs while on

supervision. (*Id.*) Further, Bradley's self-reported finances, wherein he concedes that he is self-employed and his monthly expenses exceed his monthly income, gives the Court further pause in finding pretrial release appropriate. (*Id.* at 2–3.)

The fourth category—the nature and seriousness of the danger to others—strongly favors continued detention. As set forth above, Bradley is alleged to have trafficked large amounts of fentanyl and methamphetamine, and he has a criminal history that includes convictions for drug-related offenses. This activity, when coupled with his parole violations, raises serious concerns that he will continue to traffic these dangerous substances if he is released from custody. His foreign connections also raise doubts that Bradley will appear as ordered by the Court for proceedings in this matter.

The Court has considered Bradley's ties to the community and to his family, as well as the fact that he has a place to live upon release. The Court commends Bradley for his desire to assist with the care of his elderly grandmother, and is sympathetic to his wishes to continue to be involved in the care of his children. Nevertheless, the Court concludes that there are no conditions that can reasonably assure Bradley's appearance in court and the safety of any person or the community, making pretrial release inappropriate at this time.

**III.   CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in the government's response, the Court finds that the government has demonstrated by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and community. The Court also finds that the government has demonstrated by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Bradley's appearance as required. Accordingly, Bradley's motion to revoke detention is DENIED.

**IT IS SO ORDERED**.

Dated: March 15, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**